**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

QUALITY TIME, INC., et al.,

                **Plaintiffs,**

v.                                        **Case No. 12-1008-JTM-GLR**

WEST BEND MUTUAL INSURANCE
COMPANY,

                **Defendant.**

**MEMORANDUM AND ORDER**

Before the Court is a Rule 37(a)(3)(B)(iv) Motion to Compel (ECF No. 67), filed by
Plaintiffs on August 27, 2012. For the reasons set out below, the Court grants the motion in part and
denies it in part.

**I.    Nature of the Matter Before the Court**

This action arises from the collapse on July 20, 2011 of a bowling alley owned by Plaintiff
Tammie Geldenhuys ("Geldenhuys") and a subsequent denial of insurance coverage by Defendant.[1]
On the date of collapse Defendant received an insurance claim for total loss of the building.[2]
Defendant hired Fire Consulting International, Inc. ("FCII"),[3] who assigned Paul Carney to
investigate the collapse on July 21, 2011.[4] By July 22, 2011, Defendant had also hired Semke
Forensic.[5] On July 25, 2011, Defendant retained counsel "to assist in the investigation and evalu-

---

[1] *See* Am. Compl. (ECF No. 43) ¶¶ 1, 9, 12.

[2] *See* Fax dated July 20, 2011, (ECF No. 73-1).

[3] *See* Invoice from FCII (ECF No. 67-2).

[4] *See* FCII Daily Report (ECF No. 73-9).

[5] *See* Invoice from Semke Forensic (ECF No. 67-3).

ation of the [collapse]."[6]  By letters dated July 27 and 29, 2011, Defendant stated its investigation was ongoing through Semke Engineering,[7] but that certain policy provisions might exclude the loss.[8] On November 18, 2011, the attorney for Plaintiffs informed defense counsel that, unless Defendant "offer[ed] policy limits on applicable coverages", he intended "to file suit immediately after the thirty (30) day waiting period following service of our proof of loss", which had been served on November 14, 2011.[9]  On December 15, 2011, Defendant denied coverage.[10]  On that same date Plaintiff Quality Time, Inc. ("Quality Time") filed this civil action in Montgomery County, Kansas,[11] now removed to this court.

Through their amended complaint Plaintiffs seek to reform the contract of insurance to substitute Geldenhuys as an insured.[12]  They also seek damages for breach of the insurance contract.[13] First National Bank of Independence, Kansas ("the Bank") later filed an intervenor complaint, also alleging breach of contract by Defendant.[14]  Defendant asserts that the insurance claim is excluded

---

[6]*See* Aff. White (ECF No. 73-2).

[7]The parties treat Semke Forensic and Semke Engineering as the same entity.  The Court will generally refer to the entity as Semke.

[8]*See* Letter from Def. to Geldenhuys (July 27, 2011) (ECF No. 73-3); Letter from White to Geldenhuys (July 29, 2011) (ECF No. 73-4).

[9]*See* Letter from Fitzpatrick to Davidson (Nov. 18, 2011) (ECF No. 73-11).

[10]*See* Letter from Davidson to Fitzpatrick (Dec. 15, 2011) (ECF No. 73-12).

[11]*See* Pet. Pursuant to Chap. 60, attached as Ex. A to Notice of Removal (ECF No. 1).

[12]*See* Am. Compl. ¶¶ 13-18.  Given the reformation issue, the Court will generally refer to both Plaintiffs as insureds.

[13]*See id.* at 5.

[14]*See* Compl. of Intervenor First Nat'l Bank (ECF No. 65) ¶¶ 14-23.

from coverage under various policy provisions, and that, if the claim is covered, it is "not of the nature and magnitude claimed by Plaintiffs."[15]   In answer to the intervenor complaint, it further asserts that the insurance policy is void.[16]

Pursuant to Fed. R. Civ. P. 34, Plaintiffs served requests for production on Defendant in June 2012.   Defendant responded to the requests[17] and provided a privilege log for documents withheld as work product or for attorney-client privilege.[18]   By letter dated August 1, 2012, Plaintiffs attempted to confer about Requests 9, 10, 12, 13, and 14 of their Requests for Inspection and Production.[19]   Personal matters prevented defense counsel from conferring prior to the filing of the instant motion.[20]   Plaintiffs have moved to compel Defendant to fully respond to the listed requests.[21]

---

[15]*See* Answer Pls.' Am. Compl. (ECF No. 58) ¶¶ 24, 26-27; Answer to Compl. of Intervenor (ECF No. 66) ¶¶ 26, 28-29.

[16]*See* Answer to Compl. of Intervenor ¶ 31.

[17]*See* Def.'s Resp. Pl.'s Request Prod. Docs. (ECF No. 67-5).

[18]*See* Privilege Log (ECF No. 67-1 and ECF No. 73-10).   According to Defendant, the Privilege Log does not include "correspondence and documents exchanged between counsel and its client", because "such documents are irrelevant and clearly protected from disclosure" and it "would be incredibly burdensome" to list them.   *See* Def.'s Resp. Opp'n Mot. Compel ("Resp.") (ECF No. 73) at 8 n.1.   Defendant also states that Plaintiffs do not appear to argue that such documents are discoverable.   *See id.* at 8.   Plaintiffs have filed no reply to contest the statement.   And their supporting memorandum specifically shows they do not "seek to discover legitimate attorney-client or work-product information."   *See* Pls.' Mem. Supp. Rule 37(a)(3)(B)(iv) Mot. Compel ("Mem. Supp.") (ECF No. 68) at 6.   Given this briefing, the Court does not address documents omitted from the Privilege Log that were exchanged between counsel and client.

[19]*See* Letter from Fitzpatrick to White and Davidson (Aug. 1, 2012) (ECF No. 73-7).

[20]Resp. at 3.

[21]The motion also lists Request 11 as at issue and briefly states the response by Defendant to the request.   *See* Mot. at 2.   Plaintiffs' supporting memorandum further discusses Request 11.   *See* Mem. Supp. at 8-9.   But the concluding paragraph of the motion asks only that the Court order responses to Requests 9, 10, 12, 13, and 14.   *See* Mot. at 5.   Plaintiffs, furthermore, made no effort

Defendant opposes the motion and reasserts objections to each listed request.[22]   The Bank filed a

reply brief in support.[23]   That prompted two additional filings.[24]   The motion to compel is ripe for

ruling.

## II.   Discussion

Under Fed. R. Civ. P. 34(a)(1) a party may request other parties to produce documents or

tangible items.   The request "must describe with reasonable particularity each item or category of

items to be inspected."[25]   The responding party typically has thirty days to respond in writing.[26]   "For

---

to confer about Request 11.   *See* Letter from Fitzpatrick to White and Davidson (Aug. 1, 2012) (ECF No. 73-7).   Defendant does not address Request 11 in response to the motion.   *See* Resp.   Under these facts the Court does not consider Request 11 to be at issue.   If Plaintiffs intended to place it at issue, the Court would decline to do so by reference to D. Kan. Rule 37.2.

[22]*See* Resp. at 6-16

[23]*See* Reply Br. Supp. Mot. Compel ("Reply") ((ECF No. 78).

[24]*See* Def.'s Resp. Intervening Pl.'s Improperly Filed Reply Mem. (ECF No. 83); Resp. Def.'s Mot. Strike and/or For Leave to File Sur-Reply Br. (ECF No. 87).   Citing D. Kan. Rule 7.1(c), Defendant argues that the Bank may not file a reply to the motion filed by Plaintiffs.   *See* ECF No. 83 at 2.   While Rule 7.1(c) specifically allows a reply brief or memorandum from the moving party, the Court will not infer that the rule necessarily excludes the reply brief filed by the intervening party.   Because the rule does not directly address the instant briefing issue, the Court considers it a matter within its discretion.   Exercising that discretion, it will accept and consider the reply brief.
      The reply, however, adds nothing of substance to the discovery dispute before the Court. It alleges a failure of disclosure under Fed. R. Civ. P. 26(a)(2)(B)(ii), *see* Reply at 1-3, which is separate and distinct from the alleged failure to properly respond to requests propounded pursuant to Fed. R. Civ. P. 34.   To the extent that disclosure requirement supports the motion to compel, furthermore, the Bank connects it only to Request 11, *see* Reply at 3 (referring to Plaintiffs' brief discussion of Request 11 in their supporting memorandum), which the Court has found to be not at issue.   Thus, even though the Court accepts and considers the reply brief, it does not impact the Rule 34 issues raised by the motion.

[25]Fed. R. Civ. P. 34(b)(1)(A).

[26]Fed. R. Civ. P. 34(b)(2)(A) (setting thirty-day period, unless the time period is lengthened or shortened by order of the court or a Rule 29 stipulation between the parties).

each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."[27]

Rule 26(b)(5)(A) also requires a responding party to expressly assert claims of privilege and work product when it withholds otherwise discoverable information on those grounds.  The rule further requires them to "describe the nature of the documents, communications, or tangible things not produced or disclosed."  Parties responding to discovery have "the duty to timely provide the information required by Rule 26(b)(5)."[28]  More specifically, they have "a duty when asserting privilege to describe the nature of the documents, communications, or tangible things not produced or disclosed as required by Fed. R. Civ. P. 26(b)(5)(A)(ii)."[29]  Parties withholding privileged material must provide the notice and information required by Rule 26(b)(5) when they are otherwise required to object or provide the discovery under the Federal Rules of Civil Procedure.[30]  Withholding materials without the notice required by Rule 26(b)(5)(A) "is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege."[31]

A party seeking discovery under Fed. R. Civ. P. 34 may move to compel production or

---

[27]Fed. R. Civ. P. 34(b)(2)(B).

[28]*Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999).

[29]*Cooper v. Old Dominion Freight Line, Inc.*, No. 09-CV-2441-JAR, 2011 WL 251447, at *10 (D. Kan. Jan. 25, 2011).

[30]*See Sprint Commc'ns Co., L.P. v. Vonage Holdings Corp.*, No.. 05-2433-JWL-DJW, 2007 WL 1347754, at *2 (D. Kan. May 8, 2007) (finding that inherent within Rule 26(b)(5) "is a requirement that the claim of privilege should be made at the same time that the privilege objection is lodged and the documents are withheld"); *Mike v. Dymon, Inc.*, No. 95-2405-EEO, 1996 WL 674007, at *9 (D. Kan. Nov. 14, 1996) (agreeing with *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1360 (D. Kan. 1995) that "Rule 26(b)(5) plainly contemplates" that compliance is required by the time documents are required to be produced under Fed. R. Civ. P. 34).

[31]Fed. R. Civ. P. 26(b)(5) advisory committee notes (1993 amend.).

5

inspection when the other party "fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34."[32]   The instant motion to compel places at issue five requests for production.  Defendant asserted several objections to each request.  In general, the party resisting discovery has the burden to show how requested discovery is objectionable.[33]   That burden requires the objecting party to show in its response to a motion to compel how each request for production is objectionable.[34]   "When ruling upon a motion to compel, the court generally considers those objections which have been timely asserted and relied upon in response to the motion.  It generally deems objections initially raised but not relied upon in response to the motion as abandoned."[35]

The Court thus deems abandoned all objections not relied upon in response to the instant motion.  Consequently, it considers the following objections:  (1) vague and ambiguous; (2) irrelevancy; (3) overly broad; (4) attorney-client privilege; (5) work product; and (6) discovery precluded by Fed. R. Civ. P. 26(b)(4).

---

[32]Fed. R. Civ. P. 37(a)(3)(B)(iv).  Rule 37(a)(1) requires motions to compel to "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Although Plaintiffs' motion briefly addresses the duty to confer, it does not include the required certification.  Nor does it show adequate efforts to confer.  Defendant, however, does not rely on any failure to confer in opposing the motion. *See, generally,* Resp.  Accordingly, except as already mentioned with respect to Request 11, the Court decides the motion on its merits.  *See Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 302 (D. Kan. 1996) (recognizing that even when a party fails to comply with the conference requirements, "it remains within the discretion of the court to consider the motion on its merits").

[33]*High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM, 2011 WL 4036424, at *10 (D. Kan. Sept. 12, 2011); *Employers Commercial Union Ins. Co. of Am. v. Browning-Ferris Indus. of Kan. City, Inc.*, No. 91-2161-JWL, 1993 WL 210012, at *2 (D. Kan. Apr. 5, 1993).

[34]*Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 519 (D. Kan. 2010).

[35]*Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999); *accord Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 302 (D. Kan. 1996).

## A.  Vague and Ambiguous

Defendant objects that Request 9[36] is vague and ambiguous, because it specifically requests "Computer log generated by all West Bend employees" and then attempts to include "all internal e-mails, internal memos, and internal progress notes."[37]  It also contends that documents "related to claim for collapse" could include numerous types of records and states it has "responded as though Plaintiffs were seeking any internally created documents on or after July 20, 2011 related to the collapse.[38]  Although Request 9 is not as clear as it could be, Defendant construes it more broadly than necessary.  At most, the request seeks all Computer Logs[39] and internal emails, memos, and progress notes, generated by West Bend employees and related to the collapse.  The Court will limit the request to those specific items.  With this construction of Request 9, the Court overrules the objections that the request is vague and ambiguous.

## B.  Relevancy

Defendant initially objects that Request 9 "is overly broad because it requests documents that are not reasonably calculated to lead to the discovery of admissible evidence."[40]  The briefing later

---

[36]Request 9 seeks "Computer log generated by all West Bend employees relating to claim for collapse of Quality Times bowling alley on July 20, 2011 including all internal e-mails, internal memos, and internal progress notes."  *See* ECF No. 67-5 at 4.

[37]Resp. at 6.

[38]*Id.*

[39]Defendant has provided a redacted "Claim Activity Log" (ECF No. 73-8) that provides a suitable example of a log responsive to Request 9.  The parties seem to use the terms "claim log" and "computer log" interchangeably.  The Court will consider both terms as referring to the same type of documents.

[40]*See* Resp. at 6.

properly frames the objection as one based on irrelevancy.[41]  Defendant also objects that Requests 10[42] and 12[43] seek irrelevant documents.[44]

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the general scope of discovery.[45]  Since amendments in 2000, the rule provides "a two-tiered discovery process; the first tier being attorney-managed discovery of information relevant to any claim or defense of a party, and the second being court-managed discovery that can include information relevant to the subject matter of the action."[46]  Under this two-tiered process, objections on grounds of relevancy require the courts to first "determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action."[47]

At the discovery stage of litigation, relevancy is broadly construed and courts should consider requests for discovery relevant "if there is 'any possibility' that the information sought may be rele-

---

[41]*See id.* at 8.

[42]Request 10 seeks:  "Copies of all correspondence between agents [excluding counsel] of West Bend either to another West Bend agent, or to a third party, relating to the collapse of Quality Times bowling alley."  *See* ECF No. 67-5 at 5 (bracketed language in original).

[43]Request 12 seeks:  "All billings by contractors and consultants for services performed at the behest of West Bend relating to Quality Times bowling alley collapse."  *See* ECF No. 67-5 at 6.

[44]Resp. at 12-14.

[45]Rule 26(b)(1) provides:  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."

[46]*In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009).

[47]*Id.* (quoting Fed. R. Civ. P. 26(b)(1) (2000 amend.)).

vant to the claim or defense of any party"[48] or "to the subject matter of the action."[49]  When the relevancy of requested discovery is not apparent, the party seeking the discovery has the burden to show its relevance.[50]  On the other hand, when requested discovery appears relevant, the party objecting to the discovery has the burden to show that the discovery does not fall within the broad scope of relevance set out in Rule 26(b)(1) or "is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."[51]

In this case, Plaintiffs contend they have a right to know how Defendant conducted its claim analysis and to discover what information it relied on to deny their insurance claim.[52]  They further state that whether Defendant "acted in good faith, or in fact elected to deny the claim as early as July 25, 2011 are important and relevant topics in the context of this litigation."[53]  They suggest that the billings sought by Request 12 are relevant, because Fed. R. Civ. P. 26(a)(2)(B)(vi) provides for disclosure of compensation paid to experts retained to provide expert testimony.[54]

Plaintiffs misconstrue the disclosure requirement of Fed. R. Civ. P. 26(a)(2)(B)(vi) in at least two ways.  First, the rule merely provides that required expert reports must contain "a statement of

---

[48]*Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 523 (D. Kan. 2010).

[49]*Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656 (D. Kan. 1999) (quoting  *Smith v. MCI Telecomms. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991)).  Despite the changes to Rule 26(b)(1) in 2000, the standard enunciated in "*Etienne* remains good law."  *Sheldon v. Vermonty*, 204 F.R.D. 679, 690 n.7 (D. Kan. 2001).

[50]*Mackey v. IBP, Inc.*, 167 F.R.D. 186, 193 (D. Kan. 1996).

[51]*Id.* (citation omitted).

[52]Mem. Supp. at 5.

[53]*See id.*

[54]*See id.* at 11.

the compensation to be paid."  Such statement differs materially from the "billings" responsive to Request 12.  Second, Rule 26(a)(2)(B) concerns witnesses who are "retained or specially employed to provide expert testimony in the case" or "whose duties as the party's employee regularly involve giving expert testimony."  It does not concern all contractors or consultants hired by Defendant.  The noted disclosure requirement does not support finding billing documents relevant to any asserted claim or defense.

The disclosure requirement, however, does show some subject matter relevancy of billing documents related to Defendant's disclosed experts.  Plaintiffs have carried their burden to show the relevancy of billing documents to that extent only.  But even for the apparent relevant documents, Plaintiffs have shown no good cause to compel production.  Defendant, nevertheless, states that it has provided responsive billing documents for "non-expert contractors" and that it can make responsive documents for disclosed experts available for inspection and copying.[55]  Based upon this statement, the Court will compel Defendant to make responsive billings for disclosed experts available. These rulings fully resolve Request 12.

Requests 9 and 10, on the other hand, appear to seek documents relevant to claims and defenses asserted in this action even though, as Defendant points out, Kansas law does not recognize a claim of bad faith.[56]  Responsive computer logs, correspondence, and internal memoranda and progress notes may reveal information about the reasons for denying coverage – a matter directly relevant to the breach of contract claim.  They may also provide information about the nature and

---

[55]*See* Resp. at 14.

[56]*See Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 144 (10th Cir. 1988) (address-ing Kansas law); *Patterson v. Allstate Ins. Co.*, 31 Kan. App. 2d 919, 922, 75 P.3d 763, 766 (2003).

magnitude of the claimed loss, which is relevant to the defense that Plaintiffs have overstated the extent of the loss. Given this facial relevancy, Defendant has the burden to show these requests are irrelevant. It has failed to carry that burden. With respect to Requests 9 and 10, the Court overrules the objections based on irrelevancy.

### C. Overly Broad

Defendant objects that Request 14 is overly broad, because it seeks "'all' documents or evidence that relate [sic] or support a claim that the insured caused the collapse or knew that the structure was in a state of collapse."[57] The request actually asks Defendant to "[p]roduce for inspection all *evidence* [excluding financial records] that West Bend has obtained to support a claim that the insured or anyone acting on behalf of the insured: (a) caused the collapse and/or (b) knew in advance that the structure was in a state of collapse."[58]

Although the request is not as broad as interpreted by Defendant, requesting "evidence", nevertheless, makes it overly broad. The request would require the attorney, not the party, to exercise a personal judgment and draw arguable conclusions as to what may or may not be relevant evidence for the opposing party. In accordance with Fed. R. Civ. P. 34(b)(1)(A), requests for production should adequately specify whatever category of documents are sought. Asking for "evidence" is not sufficiently specific – it instead requires the respondent to make a conclusion and value judgment beyond what the rule requires. Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii), parties have a duty to disclose "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or

---

[57] Resp. at 15.

[58] *See* ECF No. 67-5 at 7 (emphasis in original).

defenses, unless the use would be solely for impeachment."  Beyond that requirement, however, the Federal Rules of Civil Procedure do not require a respondent over objection to a discovery request to determine what items may be evidence in the case.  For these reasons the Court sustains the objection that Request 14 is overly broad.  It will compel no further response to it.

### D.  Attorney-client Privilege

Defendant also asserts that documents sought by Request 9 are protected by the attorney-client privilege.[59]  It contends that responsive claim logs and Emails 1 through 4 and 7 through 25 listed in its privilege log are so protected.[60]

The attorney-client privilege only protects "confidential communications which involve the requesting or giving of legal advice."[61]  The privilege does not attach without a connection between "the subject of the communication and the rendering of legal advice."[62]  In fact, the privilege provides no protection unless legal advice predominates the communication rather than being incidental to business advice.[63]  In addition, the attorney-client privilege protects communications from disclosure, not the underlying facts.[64]

> "A fact is one thing and a communication concerning that fact is an entirely different thing.  The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his

---

[59]*See* Resp. at 6, 8, 11-12.

[60]*See id.* at 11-12.

[61]*New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 444 (D. Kan. 2009) (quoting *Burton v. R.J. Reynolds Tobacco Co.*, 175 F.R.D. 321, 327 (D. Kan. 1997)).

[62]*Id.* (quoting *Burton*, 175 F.R.D. at 327).

[63]*Id.*

[64]*Mackey v. IBP, Inc.*, 167 F.R.D. 186, 200 (D. Kan. 1996).

knowledge merely because he incorporated a statement of such fact into his communication to his attorney."[65]

When objecting to discovery on grounds of attorney-client privilege, the parties should carefully consider whether the discovery actually requires disclosure of privileged communications. In its privilege log, Defendant identifies sixteen internal emails as protected by the attorney-client privilege.[66] It describes fourteen of them as "E-mail regarding claim analysis and forwarding information from legal counsel" – four of which list in-house legal counsel as a recipient. Two emails are described as "E-mail regarding obtaining documentation for legal counsel" – one sent by General Counsel for Defendant and one received by that same attorney. Although the other nine listed emails were not withheld on grounds of attorney-client privilege, Defendant argues in response to the motion that Emails 1, 2, 3, 14, 20, 24, and 25 should be protected by the privilege because they relate to obtaining documents for legal counsel.[67] But nothing indicates whether any listed email involves the requesting or giving of legal advice. The descriptions are simply too vague to show that any email is protected as attorney-client communication. The mere fact that emails were from or directed to counsel does not make them subject to the attorney-client privilege.

Defendant also asserts that claim logs responsive to Request 9 are privileged to the extent they contain or reference communications or information provided by outside counsel.[68] Defendant, however, lists only internal emails in its privilege log. The omission could be fatal to the privilege claim. But Plaintiffs concede that Defendant may properly redact responsive claim logs to omit

---

[65]*Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (citation omitted).

[66]*See* Privilege Log at 1-6 (all emails except Emails 1, 2, 3, 5, 6, 14, 20, 24, and 25).

[67]*See* Resp. at 11-12.

[68]*See id.* at 11.

advice of counsel or subjects discussed between counsel and client.[69]   Given that concession,

Defendant may redact those matters from any computer or claim log produced in response to Request

9, provided it also serves an amended privilege log that adequately identifies the redacted documents

and the assertion of attorney-client privilege.   Indeed, Plaintiffs ask the Court only to deny the

privilege claims and "order full disclosure without redactions except as to those communications that

are truly privileged."[70]

### E.  Work Product

Defendant asserts an objection of work product against Requests 9, 10, and 13.[71]  As set out

in Fed. R. Civ. P. 26(b)(3), the work product doctrine protects from discovery "documents and

tangible things that are prepared in anticipation of litigation or for trial by or for another party or its

representative."  This doctrine has two distinct components – one which requires that the document

or thing in question be created because of the anticipation of litigation and one that places reasonable

limits on a party's anticipation of litigation.[72]  Whether a document constitutes work product depends

on the primary reason for its creation.[73]  In fact, there is generally no work product protection "unless

---

[69]*See* Mem. Supp. at 7.

[70]*Id.* at 13.

[71]Request 13 seeks:  "All written reports from any expert who investigated the collapse of the Quality Times bowling alley generated and dated on or before December 15, 2011."  Defendant states that the only known potentially responsive documents to this request are from a non-disclosed consulting fire investigator (Paul Carney) who it does not intend to use as an expert in this case.  *See* Resp. at 14-15.  Because Plaintiffs do not contest the statement, the Court limits its consideration of Request 13 to the identified fire investigator.

[72]*United States Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 658 (D. Kan. 2007).

[73]*Marten v. Yellow Freight Sys., Inc.*, No. 96-2013-GTV, 1998 WL 13244, at *10 (D. Kan. Jan. 6, 1998).

the primary motivating purpose for creating the document is to assist in pending or impending litigation."[74] Parties claiming work product protection must show an "underlying nexus between the preparation of the document and the specific litigation."[75]

But even when litigation is anticipated, there is no work product protection accorded to documents prepared "in the ordinary course of business or for other non-litigation purposes."[76] Such protection does not arise merely on an "inchoate possibility, or even likely chance of litigation."[77] The doctrine only justifies protection when the threat of litigation is real and imminent.[78] This means that "there must be a substantial probability that litigation will ensue at the time the documents were drafted."[79] Whether documents are prepared in anticipation of litigation ultimately requires "a case-by-case analysis, considering the unique factual context of the given problem."[80] In the context of an insurance investigation, "whether insurer and adjuster documents were created in anticipation of litigation depends on whether the party seeking protection can point to a definite shift made by the insurer or adjuster from acting in its ordinary course of business to acting in anticipation of litiga-

---

[74]*Id.* at *11.

[75]*Id.* (citation omitted); *accord Pouncil v. Branch Law Firm*, No. 10-1314-JTM, 2011 WL 5025033, at *2 (D. Kan. Oct. 21, 2011).

[76]*Ledgin v. Blue Cross & Blue Shield*, 166 F.R.D. 496, 498 (D. Kan. 1996).

[77]*See id.*

[78]*Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at *9 (D. Kan. Oct. 5, 1995).

[79]*United States Fire Ins. Co.*, 247 F.R.D. at 657.

[80]*Id.* at 659 (citation omitted).

tion."[81]

The party opposing the discovery has the burden to clearly establish all elements of the doctrine.[82] A "blanket claim" of work product does not suffice.[83] To carry this burden requires "an evidentiary showing based upon competent evidence."[84]

In this case Defendant asserts that documents responsive to Requests 9 (claim logs and internal memoranda, progress notes, and email), 10 (correspondence), and 13 (daily reports from a consultant fire investigator) created after July 24, 2011, are protected as work product.[85] To support that assertion, it primarily relies on the hiring of counsel on July 25, 2011. But it also suggests the following facts as support: (1) the claim involved a collapsed roof that is excluded from coverage unless an exception applies; (2) a denial of coverage would likely lead to litigation given the amount of coverage; and (3) agents of the insured had been in the building shortly before the collapse; various local, state, and federal authorities were investigating the loss; and the insured was in substantial financial distress.[86] While addressing specific documents claimed to be protected as work product, Defendant also relies on the November 2011 letter from counsel for Plaintiffs that he intended to file suit within thirty days unless Defendant offered policy limits.[87] Other than these

---

[81]*Id.*

[82]*McCoo v. Denny's Inc.*, 192 F.R.D. 675, 680, 683 (D. Kan. 2000).

[83]*Id.* at 680.

[84]*Id.* at 683.

[85]Resp. at 8-9, 13-15.

[86]*Id.* at 9.

[87]*Id.* at 10-11.

statements in response to the motion, Defendant does not support its assertion of work product. But it does submit a Privilege Log that provides a description of some withheld documents, the basis for withholding the documents, and the documents' authors, recipients, and dates created.[88]

Before considering specific documents identified in the privilege log, the Court first addresses whether the matters set out in response to the motion satisfy all the elements of work product. The Court does note that the requests for production seek documents and tangible things prepared by or for Defendant or its representative. Whether or not they are work product depends upon whether the responsive documents were prepared in anticipation of litigation. Opposing the motion, Defendant focuses on when it reasonably anticipated litigation. It argues that its retention of counsel on July 25, 2011, shows it anticipated litigation at that time. But merely retaining counsel does not make documents thereafter prepared protectable under the work product doctrine.[89] Retaining counsel to assist with an investigation and evaluation of insured property five days after its collapse hardly provides reason to find that Defendant has already shifted from its ordinary course of business in investigating a loss to now acting in anticipation of litigation.

Because the policy does not entirely exclude a claim for a collapsed roof in all circumstances, moreover, there was no reasonable likelihood for denying coverage before an adequate investigation could determine what caused the collapse. If facts exist to support a denial of coverage upon a theory that an insured caused or contributed to the collapse, Defendant has provided no adequate

---

[88]*See* Privilege Log (ECF No. 73-10). The log lists twenty-five emails that Defendant has withheld from discovery on the basis of work product and/or the attorney-client privilege. Although the log does not list all documents withheld from discovery on those bases, Plaintiffs do not argue waiver. And the Court can resolve the issues without finding waiver.

[89]*See Disidore v. Mail Contractors of Am., Inc.*, 196 F.R.D. 410, 414 (D. Kan. 2000).

evidence to support that suggestion, at least to counter the instant motion. It does not even appear to pursue such a defense in this action. But even if facts show a reasonable likelihood of denying coverage, this Court has specifically rejected "a bright line rule that the ordinary course of business ends and anticipation of litigation begins as soon as the insurer decides to decline coverage."[90] In this case the Court finds no reasonable premise for assuming that litigation was imminent or even reasonably anticipated before the defendant insurer at least determined that it would deny the claim.

The letter from counsel for Plaintiff, dated November 18, 2011, suggests the potential imminency of litigation. But it also shows that the prospect for that litigation would ultimately depend upon the decision of Defendant, either to concede or to deny coverage for the loss. Defendant has shown nothing to suggest that its receipt of this letter prompted an immediate or definite shift to deny coverage or act in anticipation of imminent litigation. Defendant thus has not met its burden to show a substantial probability of imminent litigation, before it denied coverage on December 15. The Court thus finds no clear evidence that the threat of litigation was real and imminent in November 2011. Defendant simply provides no clear evidence of a real threat of litigation before it denied coverage on December 15, 2011.[91] From the evidence before it, the Court cannot pinpoint any earlier date for finding a substantial probability that litigation would ensue. The Court declines to arbitrarily select a date. Defendant has the burden to show by competent evidence when it reasonably anticipated litigation.

Notwithstanding its hiring of counsel on July 25, 2011, Defendant has not shown its

---

[90]*U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 659 (D. Kan. 2007).

[91]In its response to the motion, Defendant states that it had denied the insurance claim as of December 14, 2012. *See* Resp. at 10. But it cites to a letter which unquestionably reflects that the denial occurred on December 15, 2012. *See id.* at 11 (citing ECF 73-11 (Ex. M)).

investigation process to have been anything beyond a standard business practice to investigate a claim, attempt to settle it, and avoid litigation.  The Court can also readily note the common practice of many insurers to retain outside counsel to conduct the investigation and settlement without litigation of pending claims.  In this case Defendant has shown nothing of consequence to suggest anything other than that practice in this case.  It has shown no real and imminent threat of litigation as of July 25, 2011, or even before litigation did commence on December 15, 2011.  Defendant has the burden to show otherwise, to support its claim of work product.  But it has provided no affidavit or other evidence to support that claim.  The reasons stated in response to the motion do not suffice.  Consequently, Defendant has not shown that it reasonably anticipated litigation during the investigation that finally led to its denial of coverage on December 15, 2011.   The Court cannot find that documents created before that date were in reasonable anticipation of litigation and therefore protected as work product.

Defendant reasonably anticipated litigation, of course, when Quality Time filed its state action on December 15, 2011.  Work product then applies, however, to protect only those documents created because of the litigation.  Defendant does not address this equally important component of the work product doctrine.  The mere fact it has decided to decline coverage does not mean that all documents thereafter created are because of anticipated litigation – the ordinary course of business does not simply end with that decision.[92]  Likewise, the ordinary course of business does not end with the commencement of litigation.  Computer logs, correspondence, internal memoranda and progress notes, and reports of a fire investigator are not created solely for purposes of litigation, even when litigation has commenced or is reasonably anticipated.  This is especially true when the same

---

[92]*See U.S. Fire Ins. Co..*, 247 F.R.D. at 659.

type of documents had been created as part of normal business practices before reasonably antici-pating litigation. The creation of such documents provides no indication as to why they were created. In general, the party resisting discovery on grounds of work product must show more than the creation of a document after commencement of litigation. With respect to documents not listed on its privilege log, Defendant has not carried its burden to show that withheld documents were created because of anticipated litigation.

The Court next considers whether Defendant has carried its work product burden with respect to the emails listed on its privilege log. Emails 1 through 4 were created on or before November 14, 2011.[93] This was before the letter from Plaintiffs' counsel threatening litigation. Nothing in the privilege log changes the above analysis that Defendant has failed to carry its burden to show that it reasonably anticipated litigation when these emails were created. Consequently, Emails 1 through 4 are not protected as work product.

Emails 5 through 9 were created on December 14, 2011,[94] just one day before Defendant denied coverage and Quality Time commenced suit in state court. The Court can only speculate, however, as to whether Defendant was reasonably anticipating litigation on that date. As already noted, Defendant has provided no competent evidence to show it had decided to deny coverage before December 15, 2011. An affidavit from some claims employee or counsel might have made that showing. But it has not done so. Were the Court to find that Defendant reasonably anticipated litigation as of December 14, 2011, moreover, Defendant has yet not shown that Emails 5 through 9 were created because of the anticipated litigation. The emails were all "regarding claim analysis"

---

[93]*See* Privilege Log at 1-2.

[94]*See id.* at 2-3.

and three of them also "forward[ed] information from legal counsel."[95]    But Defendant retained

outside legal counsel, as already discussed, to assist with investigating and evaluating the collapse.[96]

It did not retain counsel simply for litigation.    And "claim analysis" suggests consideration of the

insurance claim – a consideration that occurs during the ordinary course of business and not neces-

sarily a component of litigation.    The additional information provided in the privilege log fails to

carry Defendant's burden to show that Emails 5 through 9 should be protected as work product.

Emails 10 through 25 were created after litigation commenced on December 15, 2011.[97]

Whether these documents should be protected as work product depends on why they were created.

Nothing in the privilege log, however, directly addresses that question.    Defendant describes ten of

these emails as "E-mail regarding claim analysis and forwarding information from legal counsel."

It describes the other six emails as "E-mail regarding obtaining documentation for legal counsel."

These descriptions are similar to those used for Emails 5 through 9, which the Court has already

found insufficient to carry Defendant's burden to show that the emails were created because of

anticipated litigation.    But the timing of Emails 10 through 25 distinguish them from Emails 5

through 9.    Once an insurance claim has been formally denied and litigation commenced, the purpose

of further claim analysis regarding that claim and creation of emails regarding such analysis would

certainly be for purposes of the litigation.    Similarly, once litigation commences, emails regarding

obtaining or forwarding information or documents from or for counsel would be created because of

the litigation.    As stated by Defendant after noting the descriptions of the emails, "[t]hese documents

---

[95]*Id.*

[96]*See* Aff. White.

[97]*See* Privilege Log at 3-6.

are clearly created in anticipation of litigation as they were created after litigation was filed and they relate to the specific claim of Plaintiffs."[98]  While this contention is overly simplistic in general, it is accurate when supported by the descriptions and timing of the withheld emails.

Despite the failings of its briefing, Defendant has carried its burden to show that Emails 10 through 25 should be protected as work product.  Defendant of course anticipated litigation after Quality Time filed its petition in state court on December 15, 2011.  With the additional information from its privilege log, Defendant has shown that these emails were prepared because of and in anticipation of litigation.  The description of the emails with their creation dates show a nexus between the emails and this litigation.

For the foregoing reasons, the Court overrules the objection of work product as to Requests 9, 10, and 13, except as specifically sustained herein.  It sustains the objections as to Emails 10 through 25 identified in its privilege log.  Because Plaintiff has made no attempt to show a substantial need for those emails under Fed. R. Civ. P. 26(b)(3)(A)(ii), the Court finds them protected as work product.  Defendant has no duty to produce them.  Because the Court is not ordering production of any document under Rule 26(b)(3)(A)(ii), it has no need to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories" as contemplated by Fed. R. Civ. P. 26(b)(3)(B).  That provision becomes applicable only when the court orders discovery of materials that would be protected as work product but for a showing of a substantial need for the materials under Rule 26(b)(3)(A)(ii).

### F.  Discovery Precluded by Fed. R. Civ. P. 26(b)(4)

With respect to Request 13, Defendant also asserts an objection under Fed. R. Civ. P.

---

[98]Resp. at 10.

26(b)(4)(B) and (D).[99]  As the party asserting the objection, Defendant has the burden to show that these rules limit or preclude the requested discovery.

Rule 26(b)(4)(B) states that "Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded."  The rule does not otherwise protect expert reports or disclosures from discovery.  As mentioned in a prior footnote, the only known potentially responsive documents to Request 13 are from Paul Carney, a non-disclosed consulting fire investigator who Defendant does not intend to use as an expert in this case.  Because Defendant does not intend to use Mr. Carney at trial, Rule 26(a)(2) does not require any report or disclosure regarding him, and Rule 26(b)(4)(B) provides no basis to avoid discovery.

Similarly, Rule 26(b)(4)(D) is inapplicable on the facts before the Court.  This rule generally prohibits discovery of facts known and opinions held by experts retained or specially employed in anticipation of litigation or for trial preparation.  Although there appears to be no dispute that Defendant retained or specially employed Mr. Carney to investigate the roof collapse, Defendant has not shown that his retention or employment was in anticipation of litigation or for trial preparation.[100]

---

[99]Resp. at 14.  Defendant also attempts to object to Request 10 under Rule 26(b)(4)(D).  *See id.* at 13.  Because it did not assert such objection in response to Request 10, *see* ECF 67-5, it has waived that objection.  *See Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 621 (D. Kan. 2005).

[100]Even though Defendant has waived its objection under Rule 26(b)(4)(D), the Court notes that Defendant has also not shown that it retained or specially employed Semke in anticipation of litigation or for trial preparation.  Documents before the Court clearly show that Defendant retained the services of Semke by July 22, 2011.  *See* Invoice from Semke Forensic (ECF No. 67-3); Letter from Def. to Geldenhuys (July 27, 2011) (ECF No. 73-3); Letter from White to Geldenhuys (July 29, 2011) (ECF No. 73-4).  Accordingly, Rule 26(b)(4)(D) does not limit discovery that Plaintiffs can obtain concerning facts known or opinions of Semke.

23

To the contrary, Defendant retained his services on July 21, 2011,[101] well before Defendant reasonably anticipated litigation.  Because Defendant did not retain or specially employ Mr. Carney in anticipation of litigation or for trial preparation, Rule 26(b)(4)(D) does not limit discovery that Plaintiffs can obtain concerning his opinions or facts known by him.

**IT IS HEREBY ORDERED THAT** the Rule 37(a)(3)(B)(iv) Motion to Compel (ECF No. 67), filed by Plaintiffs on August 27, 2012, is granted in part and denied in part, as set forth herein. Within thirty days of the date of this Order, Defendant shall produce all items responsive to Requests 9, 10, and 13, except for Emails 10 through 25 protected as work product and listed in the Privilege Log.  In addition, based on Defendant's statement that for disclosed experts, it can make billing documents responsive to Request 12 available for inspection and copying, Defendant shall make those responsive billings available within thirty days of the date of this Order.  The production ordered herein shall take place at the offices of Plaintiffs' counsel or at any other location to which the parties agree.  An award of expenses or fees is inappropriate under the circumstances.  Each party shall bear its own attorney fees and expenses incurred in connection with the motion to compel.

Dated in Kansas City, Kansas on this 13th day of November, 2012.

S/Gerald L. Rushfelt
Gerald L. Rushfelt
U.S. Magistrate Judge

---

[101] *See* FCII Daily Report (redacted after July 24, 2011) (ECF No. 73-9).

24