IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Quality Time, Inc., and Tammie
Geldenhuys,

        Plaintiffs,

        vs.                              Case No. 12-1008-JTM

West Bend Mutual Insurance Company,

        Defendant.

MEMORANDUM AND ORDER

Citing the court's duty under *Daubert v. Merrell Dow Pharmaceutical Inc.*, 509 U.S. 579 (1993) to act as a gatekeeper with respect to proposed expert testimony, defendant West Bend Insurance has moved to limit the proposed testimony of one of the plaintiff's expert witnesses, architect Leonhard Calfisch. The plaintiffs oppose the motion.

Calfisch has indicated that he believes the roof of the bowling alley collapsed through the combined effect of the weight of the scoring monitors, the construction methods used in 1958, and decay. He stated in his report that the weight of the five monitors "could compromise the stability of the truss' individual members." The collapse began with the failure of the tension tie members of the tiered arch roof supports. He believes that decay in the walls contributed to the effect of broken trusses to cause the collapse.

Calfisch is an architect and not an engineer. In his job as an architect, he has worked with structural engineers, mechanical engineers and plumbing engineers. He has a

Bachelor's degree in architecture, and has worked as an architect for firms specializing in school construction.

Although Calfisch has worked on projects where the original structure integrity of a building was compromised by shifting, decay, and deterioration, he has never before conducted any forensic examination of a building collapse. He has no expertise in wood science or strength. During his deposition, he has agreed that the evaluation of the strength of a ruff truss or tiered arch is "definitely a performance by a structural engineer, not an architect." He agrees that an engineer must do the calculations for failure analysis, and that he was not qualified to evaluate the strength or structural integrity of the tiered arches. He stated he would call an engineer to determine the structural integrity of the tied arches of the alley prior to the collapse, and he testified it would be outside his education, training and experience to offer an opinion regarding the structural integrity of the tied arches prior to the collapse.

He testified he saw no evidence of decay in the tie members, has no expertise in decay, and that his opinions as to decay are speculative. He does not believe there was any lateral movement in the roof before the collapse. He does not know any of the design capacities of any of the tied arch members of the alley prior to the collapse. He performed no calculations or tests to support his conclusions. He did no variable analysis to determine how the alley would have collapsed once the tension ties began to fail. He has no training in the effect of temperature change on dimensional lumber. He stated: "we know the tension members failed; but, how they failed in what order, it can only be speculation."

*Conclusions of Law*

As reflected in the parties' pleadings, Calfisch has advanced three opinions potentially relevant at trial. First, that the collapse originated with the bottom chords and

tiered arches. Second, that defects in the construction design contributed to the catastrophic collapse. And third, that decay helped cause or contribute the collapse.

There is no substantial argument as to two of these opinions. As to the initial structural failure of the collapse of the roof supports, defendant contends that Calfisch has acknowledged that he has simply relied on the work of the structural engineers. Calfisch stated in his deposition that it was "possible" the collapse began near the monitors, and that the collective weight of the monitors "*could* compromise the stability of the truss' individual members." While generally opposing the motion to exclude, plaintiff's Response indicates that Calfisch will not offer opinion testimony on the subject. Thus, it states that in understands the insurer's motion to

> primarily address[] Mr. Caflisch's opinions regarding the tied arches of the structure and the impact decay may have had in their ability to withstand vertical and horizontal stress. *Plaintiff does not intend to offer Mr. Caflisch's testimony on that subject*, other than the fact that he is aware both plaintiff and defense structural engineers agree that heat and cumulative creep stress reduces the strength of the arch truss components, particularly the tension tie members.

(Dkt. 133, at 4) (emphasis added).

Correspondingly, West Bend states in its Reply that it now understands Calfisch's testimony to be limited to "discussing defects in construction and decay and deterioration in the bearing walls, pilasters, rebar, mortar, plywood roof sheeting and foundation," and that it will not challenge such testimony. West Bend does observe that under Section D.2 of the policy, a collapse due solely to construction or design defect is covered only if the collapse occurs during the course of construction. If such a defect contributes to a subsequent collapse, coverage may exist if the other causal factor is one of these otherwise set forth in the policy.

The dispute between the parties, therefore, focuses on Calfisch's testimony relating to decay in the alley structure. The court finds that as to such testimony, West Bend's motion should be granted.

3

The plaintiff presents two arguments. It contends that *Daubert* is inapplicable, because Calfisch premises his testimony on his experience and training, and not any particular methodology or technique. However, the case relied on for this proposition, *Compton v. Suburu of America*, 82 Fed.3d 1513 (10th Cir. 1996), was expressly overrruled in *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999) (district court's gatekeeping function applies to all expert testimony, not just testimony based in a particular science or methodology).

In performing its gatekeeper role with respect to expert testimony, Fed.R.Evid. 702 requires the court to determine first whether the expert is qualified "by knowledge, skill, experience, training, or education" to render the proposed opinion." Second, the court "must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." *United States v. Rodriguez–Felix*, 450 F.3d 1117, 1122 (10th Cir.2006). *See N. Am. Specialty Ins. v. Britt Paulk Ins. Agency, Inc.*, 579 F.3d 1106, 1112 (10th Cir.2009) (second step has two distinct components — reliability, and relevancy, that is, the evidence "must be helpful to the jury").

Calfisch's proposed testimony as to the existence of decay fails to meet this standard. The plaintiffs suggest that West Bend is trying to have the court "determine as a matter of law that decay and deterioration ... played no role" in the collapse of the alley. (Dkt. 133, at 7). This is incorrect. The cause of the building collapse is a matter for expert testimony, and Calfisch has candidly acknowledged that he has no expertise in decay or in wood science or strength, that he detected no sign of decay in the tie members, and that his opinions as to decay are speculative. The court is not determining as a matter of law that decay played no role in the collapse. Rather, it determines that Calfisch's proposed testimony fails to satisfy either of the two tests for admissibility, as he is not an expert qualified to address the subject, and because his testimony would not be helpful to the jury.

IT IS ACCORDINGLY ORDERED this 18th day of March, 2013, that the Motion to Exclude (Dkt. 130) is granted as provided herein.

                                                              s/J. Thomas Marten
                                                              J. THOMAS MARTEN, JUDGE