IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

Quality Time, Inc.,

    Plaintiff,

vs.                Case No. 12-1008-JTM

West Bend Mutual Insurance Company,

    Defendant.

MEMORANDUM AND ORDER

This matter is before the court on the Plaintiff's Motion *in Limine*. For the reasons provided herein, the motion is denied.

*1. Definitions of "Decay" and "Personal Property"*

The Plaintiff suggests rules of construction as to the terms "decay" and "personal property," but the only evidence specifically targeted in the motion is the request that "neither lay witnesses or experts should be allowed to proffer their own definition of 'personal property' or 'fixtures' during the course of the trial." (Mtn. at 2-3). These are legal issues upon which the court will instruct the jury at the proper time. Witnesses for both parties may naturally testify as to their understandings of what the monitors were,

personal property or fixtures, but court will direct the jury that the final instructions will control. The requested order *in limine* is unnecessary and will unfairly restrict the ability of the jury to consider all relevant evidence.

## 2. *Underwriting Guidelines*

The Plaintiff requests that the court bar West Bend from "introducing their underwriting guidelines as the measure of 'materiality' or voice opinions that it would not have authorized a binder or issued a policy had it known about the truth about tax liens and ownership." (Mtn. 3). The Plaintiff premises this request on what "[t]he evidence will reveal" as to various red flags of which, Plaintiff contends, West Bend should have taken note.

The factual argument then presented by Plaintiff combines inference, speculation, legal argument, and repeated factual assertions untied to specific evidentiary citations. As an inherently fact-driven argument, the proper method for Plaintiff to exclude the underwriting guidelines was a motion for summary judgment. The court recently resolved the extensive summary judgment motions of the parties, none of which addressed this issue. Presented now in the form of a motion *in limine* and without the requirement for careful documentation and proof of all facts beyond a reasonable doubt, the court denies the motion as both untimely and unjustified.

Additionally, Plaintiff also argues that the underwriting guidelines were not timely disclosed under Rule 26(a)(3)(B). That the guidelines would be a key part of West Bend's

defense was obvious at the time of summary judgment, and if Plaintiff wanted to obtain or exclude them, it should have done so earlier. And the Plaintiff, who has been energetically obtaining last-minute evidence from the Carpenter agency and the Montgomery County Treasurer's Office, has little grounds for insistence on strict compliance with Rule 26.

*3. Wear and Tear*

The Plaintiff seeks to exclude any suggestion that the collapse occurred through "normal wear and tear." The Plaintiff premises this argument on three elements: the report of West Bend expert Mark Chauvin, which (Plaintiff alleges) did not cite wear and tear as a cause of the collapse but indicated instead that it was due to heat deformation, the court's February 7, 2013 Order resolving the summary judgment motions, and a general contention that "wear and tear" is inapplicable to a building collapse. The court finds that none of these elements support the relief sought.

First, the defendant represents Chauvin has not and will not attribute the collapse to heat deformation. While Chauvin's report may not have explicitly used the term "wear and tear," that in any event is an ultimate issue for the jury, rather than a precondition for admissibility. The court has previously discussed Chauvin's testimony in the February 7 Order (Dkt. 134, at 12-13, 16), and finds that Chauvin may properly testify about the nature of the collapse.

Second, the court in the February 7 Order did not find that the "wear and tear"

exclusion was completely removed from the case.

The court in that Order found that "decay" should be construed as a deteriorating change, often gradual, from a sound condition. (*Id*. at 20). It does not require organic decomposition. (*Id*.) Further, the court determined that "wear and tear" and "decay" were not entirely distinct terms, and that the specific hidden decay provision in Schedule D provided as positive assurance of coverage, and so would control over the more general "wear and tear" exclusion in Section B.2. (*Id*. at 21). Accordingly, "[i]f the facts establish that a hidden decay collapse occurred, coverage exists, notwithstanding any general exclusion for collapse, or for wear and tear. " (*Id*. at 22).

"Wear and tear"and "decay" are terms which are frequently linked in Kansas law. *See Southwestern Bell Tel. v. State Corp. Com'n*, 192 Kan. 39, 386 P.2d 515 (1963) (noting the linked concepts of "wear and tear, decay, action of the elements, inadequacy, obsolescence"in a rate making case, *quoting* F.C.C. Uniform System of Accounts). In an earlier rate case, the court described depreciation as "the loss caused by wear and tear, decay, obsolescence, changes in the art, etc. " *State v. Southwestern Bell Tel.*, 115 Kan. 236, 223 P. 771, 780 (1924). Generally, wear and tear is a form of "deterioration [involving] a functional loss arising out of a change in physical condition." *Garvey Grain v. MacDonald*, 203 Kan. 1, 27, 453 P.2d 59 (1969) (quoting Kohler, A Dictionary for Accountants, (3d Ed.)).

In construing the Policy, the court seeks to give effect to the parties' intentions; in doing so it considers the entire agreement, and seeks to harmonize the various terms of the Policy without vitiating any particular provision. *See, e.g., Central Natural Resources v. Davis*

4

*Operating Co.*, 288 Kan. 234, 244–45, 201 P.3d 680 (2009). The court meets this goal here by determining, consistent with the February 7 Order, that coverage exists under the Policy if the collapse occurred through hidden decay. If, on the other hand, the collapse occurred through general deterioration over time which was open, obvious, and manifest, rather than silent, hidden, or concealed, coverage is excluded.

The Plaintiff's final argument—that "wear and tear" is limited to depreciation of an article caused by "movement of its constituent parts" is so conclusory that it may be quoted in full—"Structural components of a building are subject to decay and corrosion, but not wear and tear. They do not move. They are not supposed to move." (Mtn. at 5).

Plaintiff submits no authority whatsoever for the assertion that "wear and tear" only applies to items with moving constituent parts. Numerous Kansas decisions suggest that "wear and tear" is not limited. *See Huser v. Duck Creek Watershed (Joint) Dist. No. 59*, 234 Kan. 1, 668 P.2d 172, 180 (1983) (noting a low water level will "cause more war and tear on the [Duck Creek] dam and shorten the life of the structure"); *Dunlap v. Lawless*, 192 Kan. 686, 689, 391 P.2d 70, 73 ("[t]here are many miles of highway in the state system and it is all subject to the wear and tear of travel, to the happening of the ordinary occurrences common to all roads and to the natural wear and change due to exposure to the elements"); *Walker v. German Insurance*, 51 Kan. 725, 33 P. 597 (1893) (noting evidence insurer had made "a careful computation of the cost of the building [destroyed by fire] deducting for wear and tear"). Such a suggestion in any event would be contrary here to the manifest intent of the parties, who after all expressly agreed to a "wear and tear" provision in an insurance

5

policy for the Plaintiff's building.

*4. Evidence of Market Value*

The Plaintiff moves to exclude all evidence, including appraisals, of the actual market value of the bowling alley. The Plaintiff contends that the West Bend Policy insured the alley for $516,000, and that this is conclusively presumed to be the amount of the loss under Kansas law. Specifically, K.S.A. 40-905(a)(1) provides:

> Whenever any policy of insurance or an increase in the amount of coverage in an existing policy of insurance shall be written to insure any improvements upon real property in this state against loss by fire, tornado, windstorm or lightning, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or the insured's assigns, the amount of insurance written in such policy shall be taken conclusively to be the true value of the property insured, and the true amount of loss and measure of damages, and the payment of money as a premium for insurance shall be prima facie evidence that the party paying for such insurance is the owner of the property insured.

Although the actual loss here did not involve "fire, tornado, windstorm, or lightning," the statute remains applicable because the West Bend policy included such losses within its coverage. Construing a similar statute providing for an award of attorney fees in some actions, K.S.A. 40-908, the Kansas Supreme Court has held that the statute applies so long as the policy covers the enumerated risks, even if the actual loss arises from a different clause. *See Lee Builders v. Farm Bureau Mut. Ins.*, 281 Kan. 844, 137 P.3d 486 (2006).

However, the court finds that the Motion *in Limine* should be denied, as factual

questions remain as to the application of the statute. First, the statute by its own terms only applies if the building has been "wholly destroyed." The Plaintiff has not established beyond a reasonable doubt the destruction to the bowling alley was so complete. The court will accordingly instruct the jury consistent with PIK 124.46 as to the meaning of "wholly destroyed" for purposes of the application of 40-905(a).

Second, the statute also has no application where the injury occurred through the "criminal fault on the part of the insured." The court has previously and expressly determined that the application of the Exclusion for intentional damage to the bowling alley is a question for the jury.

*5. Fixtures evidence.*

Similar to the definitions of "decay" and "personal property," the Plaintiff seeks to bar a West Bend witness from

> provid[ing] the Court and jury his [own] definition [of a fixture]. Assuming proper foundation and qualification, he can provide his opinion of market value, but he should not be permitted to establish the standard for distinguishing personal property from fixtures.

(Mtn. at 6).

The court will deny this element of the motion for the same reason it denies the first. That is, the understandings and interpretations of the defendant's witnesses may be properly submitted to the jury—just as, presumably, the Geldenhuys will offer their own understandings of whether the monitors were "personal property" or "fixtures." The Court

7

will instruct the jury that any such interpretation is not conclusive, and that the jury shall follow the instructions given by the Court at the conclusion of the trial.

IT IS ACCORDINGLY ORDERED this 5th day of April, 2013, that the Plaintiff's Motion in Limine (Dkt. 169) is hereby denied.

 s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE